[No. 40100-9-I.    Division One.    November 2, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY D. JACOBSON, *Appellant*.

*Gregory C. Link* and *Sharon J. Blackford* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Foerschler, Deputy*, for respondent.

KENNEDY, C.J. — Jeffrey Jacobson was convicted of vehicular homicide for killing Terry Grubham in a head-on collision. The sentencing court imposed an exceptional sentence upward, finding that Jacobson intentionally drove southbound in the northbound lanes of a divided highway at night with his headlights off while intoxicated and fleeing the police. Jacobson appeals his exceptional sentence, contending as follows: (1) that the sentencing court's stated

reason for imposing his exceptional sentence—his more egregious than typical conduct—is not supported by substantial evidence in the record and does not justify an exceptional sentence as a matter of law; (2) that RCW 9.94A.120(2) and RCW 9.94A.390(2)(e), the statutes from which the courts derived the conduct-more-egregious-than-typical aggravating factor, are unconstitutionally vague as applied to him; (3) that the Supreme Court's holding in *State v. Solberg*, 122 Wn.2d 688, 861 P.2d 460 (1993)—which sets forth the proper standards for reviewing exceptional sentences under RCW 9.94A.210(4)—infringes upon his statutory and constitutional rights to appeal the sentencing court's subjective determination that his conduct was more egregious than typical for a vehicular homicide case; (4) and that the sentencing court based his exceptional sentence on aggravating facts that would establish some unidentified, undefined crime more serious than vehicular homicide, thereby violating the real facts doctrine. We reject these contentions and affirm Jacobson's exceptional sentence.

## FACTS

On the night of March 26, 1996, Jacobson consumed approximately 40 ounces of beer before sneaking out of his parent's apartment with his 16-year-old cousin, K.B. After learning that the store from which they planned to rent a movie was closed, Jacobson and K.B. went to a convenience store to buy more beer. Because he was under the legal age to purchase alcohol, Jacobson arranged for an unidentified person to buy the beer, and then drove to a large parking lot.

Shortly after 2 A.M., Renton Police Officer Carrie Phillips—who was investigating a nearby burglary—spotted Jacobson's car in the parking lot. As Officer Phillips approached the car, Jacobson sped away with his headlights off. Officer Phillips activated her overhead lights and followed Jacobson. Jacobson turned out of the parking lot and onto the street. After a couple of turns, Jacobson sped

southbound on Rainier Avenue. Officer Alan Ezekiel joined the pursuit. Officers Phillips and Ezekiel both had their emergency lights and sirens activated. Officer Pete Kordel also joined the pursuit on Rainier Avenue.

At the intersection of Grady Street and Rainier Avenue, Jacobson ran a red light—crossing the intersection at a diagonal—and entered the northbound lanes of State Route 167, a divided highway, heading southbound. Jacobson's headlights were still off. The pursuing officers did not follow Jacobson into the northbound lanes but continued to track his movements from the southbound lanes of SR 167.

Upon entering the northbound lanes of SR 167, Jacobson slowed and pulled toward the shoulder, and then pulled back into the northbound lanes and continued to proceed south. Jacobson's car eventually collided head-on with Terry Grubham's pickup truck, killing him.

Emergency crews arrived at the scene and extricated Jacobson and K.B. from the car. Jacobson was belligerent and uncooperative. Firefighter Howard Moore smelled alcohol on Jacobson's breath. According to Moore, Jacobson told one paramedic, "If I wasn't drunk, I would kick your ass." 3 Report of Proceedings at 71. In response to a question by paramedic Mel McClure, Jacobson said, "I will answer your questions when I'm not drunk." *Id.* at 94. McClure also smelled alcohol on Jacobson. The paramedics transported Jacobson to the hospital.

At the hospital, Jacobson's blood was drawn. Analysis revealed that his blood alcohol level—approximately 90 minutes after the crash—was .06 grams per 100 milliliters. Based on the average rate at which a person absorbs and metabolizes alcohol, Jacobson's blood alcohol level at the time of the accident was probably between .06 and .09 grams per 100 milliliters.

The State charged Jacobson with second degree felony murder and vehicular homicide. During a pretrial hearing, Jacobson told the court, "Your honor, I am sorry I have to be here. One of the many reasons I am is because I was intoxicated at the time and I wasn't thinking straight. I re-

ally don't drink." 3 Report of Proceedings at 13. At trial, K.B. testified that she could not remember anything that happened after the police chase began. But she did testify that Jacobson had stated earlier in the evening that he probably would not stop if approached by the police.

The jury was unable to reach a unanimous verdict on the second degree felony murder charge but convicted Jacobson on the vehicular homicide charge, finding that Jacobson was operating his vehicle while intoxicated and in a reckless manner. The court imposed a 70-month exceptional sentence upward, finding that Jacobson's conduct was more egregious than typical for a vehicular homicide case. Jacobson appeals his exceptional sentence.

## DISCUSSION

### I. RCW 9.94A.210(4)(a)

A reviewing court will not reverse an exceptional sentence under RCW 9.94A.210(4)(a) unless the sentencing court's stated reason for imposing the exceptional sentence is clearly erroneous or its stated reason does not justify an exceptional sentence as a matter of law. *State v. Jeannotte*, 133 Wn.2d 847, 856-57, 947 P.2d 1192 (1997).

### A. "Clearly Erroneous"

A stated reason justifying an exceptional sentence is clearly erroneous if it is not supported by substantial evidence in the record. *Id.* at 856. "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *State v. Graffius*, 74 Wn. App. 23, 29, 871 P.2d 1115 (1994). In this case, the record fully supports the sentencing court's findings that Jacobson intentionally drove southbound in the northbound lanes of a divided highway at night with his headlights off while intoxicated and fleeing the police.[1] These findings, in turn, are sufficient to persuade a fair-minded person that

---

[1]Although Jacobson assigns error to several of these findings of fact, he fails to support his assignments of error with argument. Therefore, the sentencing

Jacobson's conduct was more egregious than typical for a vehicular homicide case. Therefore, Jacobson's exceptional sentence is not clearly erroneous.

## B. "As a Matter of Law"

■ A stated reason justifying an exceptional sentence is legally adequate if it is substantial and compelling, and does not duplicate factors necessarily considered by the Legislature in computing the standard range. *Jeannotte*, 133 Wn.2d at 857. In *State v. Perez*, 69 Wn. App. 133, 138-39, 847 P.2d 532 (1993), the court held that the defendant's more egregious than typical conduct—a factor that the Legislature did not necessarily consider when it set the standard range for vehicular homicide—substantially and compellingly distinguished the defendant's crime from other vehicular homicides. The court thus concluded that conduct more egregious than typical for a vehicular homicide is a legally adequate aggravating factor. *Id.* at 139.

■ Likewise, in this case, the sentencing court based Jacobson's exceptional sentence on his more egregious than typical conduct which substantially and compellingly distinguished his conduct from other vehicular homicides, stating: "Defendant's conduct is clearly distinguishable from conduct seen in 'typical' vehicular homicide cases. The severity and egregiousness of the aforementioned facts fall between those of Vehicular Homicide and Murder in the Second Degree." Clerk's Papers at 83-84. The sentencing court's stated reason for imposing Jacobson's exceptional sentence—his more egregious than typical conduct—is a legally adequate aggravating factor.

## II. Void for Vagueness

■ ■ Jacobson contends that RCW 9.94A.120(2) and RCW 9.94A.390(2)(e)—the statutes from which the courts derived the conduct-more-egregious-than-typical aggravat-

court's findings are verities on appeal. *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 244, 877 P.2d 176 (1994).

ing factor—are unconstitutionally vague as applied to him. Under the due process clause, a criminal statute is unconstitutionally vague if it fails to provide citizens with fair notice of proscribed conduct or fails to protect citizens from arbitrary enforcement. *State v. Halstien*, 122 Wn.2d 109, 116-17, 857 P.2d 270 (1993). "So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder*, 442 U.S. 114, 123, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979).

■■■■ The void for vagueness doctrine applies to laws that attempt to "proscribe or prescribe conduct." *United States v. Wivell*, 893 F.2d 156, 159 (8th Cir. 1990). Statutes governing the discretion of sentencing courts, on the other hand, do not define illegal conduct but merely provide directives for judges to consider when imposing sentences. *Id.* at 160. Therefore, applying the void for vagueness doctrine to sentencing guidelines is theoretically and analytically unsound:

> Because there is no constitutional right to sentencing guidelines—or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines— the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague. It therefore follows that the Guidelines cannot be unconstitutionally vague as applied to [the defendant] in this case. Even vague guidelines cabin discretion more than no guidelines at all. What a defendant may call arbitrary and capricious, the legislature may call discretionary, and the Constitution permits legislatures to lodge a considerable amount of discretion with judges in devising sentences.

*Id.* at 160. Accordingly, the Eighth Circuit has held that the federal Sentencing Guidelines "are simply not susceptible to a vagueness attack." *Id.* at 159.

For the same reason, it is difficult to imagine a case in which a Sentencing Reform Act provision that grants limited discretion to sentencing courts could be found unconstitutionally vague. But the State does not make this

argument. Therefore, we will apply the void for vagueness doctrine to RCW 9.94A.120(2) and RCW 9.94A.390(2)(e), even though we believe the application to be theoretically and analytically unsound. *See* RAP 12.1(a) (appellate courts ordinarily will decide cases only on the basis of issues set forth by the parties in their briefs).

"The test for vagueness of provisions in the [Sentencing Reform Act] is whether a person of reasonable understanding is required to guess at the meaning of the statute." *State v. Branch*, 129 Wn.2d 635, 648, 919 P.2d 1228 (1996) (citing *In re Personal Restraint of Myers*, 105 Wn.2d 257, 267, 714 P.2d 303 (1986)). Vagueness challenges are considered in the context of the entire enactment. *City of Spokane v. Douglass*, 115 Wn.2d 171, 180, 795 P.2d 693 (1990). "Furthermore, the language used in the enactment is afforded a sensible, meaningful, and practical interpretation." *Id.* (footnote omitted).

The party challenging a statute under the void for vagueness doctrine bears the burden of overcoming a presumption of constitutionality, i.e., "a statute is presumed to be constitutional unless it appears unconstitutional beyond a reasonable doubt." *Halstien*, 122 Wn.2d at 118. Because Jacobson's vagueness challenge does not implicate the First Amendment, he must demonstrate that RCW 9.94A.120(2) and RCW 9.94A.390(2)(e) are unconstitutionally vague as applied to him. *Douglass*, 115 Wn.2d at 182.

In this case, the sentencing court found that Jacobson intentionally drove southbound in the northbound lanes of a divided highway at night with his headlights off while intoxicated and fleeing the police. RCW 9.94A.120(2) authorizes a sentencing court to "impose a sentence outside the standard sentence range . . . if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.390 provides a nonexclusive list of factors "which the court may consider in the exercise of its discretion to impose an exceptional sentence." Applying these provisions to the facts of this case, a person of reasonable understand-

ing can comprehend that the SRA authorizes a sentencing court, in its discretion, to impose an exceptional sentence based on conduct as egregious as Jacobson's. *See Branch*, 129 Wn.2d at 648.

Nonetheless, Jacobson maintains that RCW 9.94A.120(2) and RCW 9.94A.390(2) lack ascertainable standards for adjudication, permitting sentencing judges to arbitrarily impose exceptional sentences in vehicular homicide cases depending on their own individual experiences on the bench. Appellant's Br. at 18-19 (citing *State v. Solberg*, 122 Wn.2d 688, 709, 861 P.2d 460 (1993) (Madsen, J., dissenting); *Perez*, 69 Wn. App. at 141-42 (Alexander, J., dissenting)). But "the fact that there is a discretionary element to sentencing does not mean the statute is vague." *State v. Hrycenko*, 85 Wn. App. 543, 549, 933 P.2d 435 (1997). That is, the federal and state due process clauses do not guarantee criminal defendants that they will be sentenced the same as others charged under similar circumstances:

> The Legislature has expressly given sentencing courts limited discretion to grant exceptional sentences. The exercise of discretion inherently involves the possibility of different results. Absent reliance by a trial court upon an unconstitutional basis for imposing a particular sentence, we see no constitutional implications in the fact that different results may ensue from similar facts. Offenders may in some instances benefit from a court's exercise of discretion, but offenders do not have a right to a particular result that lies within the courts' discretion.

*State v. Rousseau*, 78 Wn. App. 774, 777, 898 P.2d 870 (1995), *review denied*, 128 Wn.2d 1011 (1996). Moreover, the procedural safeguard requiring sentencing courts to state their reasons for imposing exceptional sentences on the record—subject to appellate review—prevents arbitrary sentencing decisions. *Hrycenko*, 85 Wn. App. at 549; *see also* DAVID BOERNER, SENTENCING IN WASHINGTON §§ 9.1-9.2, 9.5 (1985). Therefore, although the conduct-more-egregious-than-typical exceptional sentence aggravating factor grants some limited discretion to sentencing courts, RCW

9.94A.120(2) and RCW 9.94A.390(2) do not permit sentencing courts to arbitrarily impose exceptional sentences in vehicular homicide cases.

In sum, RCW 9.94A.120(2) and RCW 9.94A.390(2)(e)—the statutes from which the courts derived the conduct-more-egregious-than-typical exceptional sentence aggravating factor—satisfy the requirements of due process. *See Halstien*, 122 Wn.2d at 116-17. Therefore, the conduct-more-egregious-than-typical exceptional sentence aggravating factor—as applied to Jacobson—is not unconstitutionally vague.

## III. Right to Appeal

■ Jacobson next contends that the Supreme Court's decision in *State v. Solberg*, 122 Wn.2d 688, 861 P.2d 460 (1993) violates his statutory and constitutional rights to appeal his exceptional sentence. *See* RCW 9.94A.210(4); WASH. CONST. art. I, § 22 (amend. 10). That is, he contends that *Solberg* bars appellate courts from reviewing a sentencing court's subjective determination that a defendant's conduct satisfies a particular exceptional sentence aggravating factor. Appellant's Br. at 33 (citing *Solberg*, 122 Wn.2d at 709 (Madsen, J., dissenting); *Perez*, 69 Wn. App. at 141-42 (Alexander, J., dissenting)). Jacobson, however, misconstrues the majority's holding in *Solberg*.

Solberg was convicted of possessing marijuana with intent to deliver. The sentencing court imposed an exceptional sentence, finding that the "offense involved a high degree of sophistication in terms of time and effort and a substantial financial investment for the equipment and power necessary for the operation." *Id.* at 702. Solberg appealed.

On review, the Court of Appeals compared the facts contained in the *Solberg* record with those contained in some prior appellate decisions and concluded, as a matter of law, that the record did not contain substantial evidence that Solberg had a sophisticated marijuana grow operation: "[N]othing in the record establishes that this grow opera-

tion is more sophisticated or larger than the average indoor grow operation." *State v. Solberg*, 66 Wn. App. 66, 80-81, 831 P.2d 754 (1992), *aff'd in part, rev'd in part*, 122 Wn.2d 668, 861 P.2d 460 (1993). Accordingly, the Court of Appeals vacated Solberg's exceptional sentence and remanded for resentencing. *Id.* at 82. The Supreme Court granted the State's petition for review. *State v. Solberg*, 120 Wn.2d 1019, 844 P.2d 1018 (1993).

The Supreme Court concluded that the Court of Appeals applied the wrong standard when it reviewed Solberg's exceptional sentence. *Solberg*, 122 Wn.2d at 703. That is, the Supreme Court held that appellate courts must review the record for substantial evidence supporting the sentencing court's stated reasons for imposing an exceptional sentence under the "clearly erroneous" standard, not the "as a matter of law" standard. *Id.* at 705 (citing RCW 9.94A.210(4)). In support of applying the more deferential "clearly erroneous" standard to the record, the Supreme Court noted that trial courts—which have more familiarity with day-to-day drug violations—are in a better position than appellate courts to determine if the evidence supports an exceptional sentence. *Id.* at 707. The Supreme Court then applied the "clearly erroneous" standard to the record and concluded that substantial evidence supported the sentencing court's finding that Solberg's offense involved "a more sophisticated operation than the usual crime involving possession of marijuana with intent to deliver or manufacture." *Id.* Accordingly, the Supreme Court reversed the Court of Appeals in part and reinstated Solberg's exceptional sentence. *Id.* at 708.

In sum, Jacobson misconstrues the *Solberg* decision as barring review of the sentencing court's subjective determination that his conduct satisfies the conduct-more-egregious-than-typical exceptional sentence aggravating factor. *Solberg* merely requires the reviewing court to apply the more deferential "clearly erroneous" standard to the record rather than the "as a matter of law" standard. *Sol-*

*berg*, 122 Wn.2d at 705.[2] In other words, *Solberg* permits appellate courts to review the record for sufficient evidence to persuade a fair-minded person that the defendant's conduct satisfies the sentencing court's stated reason for imposing an exceptional sentence. Therefore, the Supreme Court's decision in *Solberg* does not infringe upon Jacobson's statutory or constitutional right to appeal his exceptional sentence.

## IV. Real Facts Doctrine

■ Jacobson contends that the sentencing court based his exceptional sentence on an unproven or uncharged crime that the sentencing court found to be more serious than vehicular homicide, thereby violating the real facts doctrine. This court reviews the legal sufficiency of the sentencing court's stated reasons for imposing the exceptional sentence de novo. *State v. Tierney*, 74 Wn. App. 346, 350, 872 P.2d 1145 (1994), *cert. denied*, 513 U.S. 1172, 115 S. Ct. 1149, 130 L. Ed. 2d 1107 (1995).

■ The real facts doctrine prohibits a sentencing court from imposing an exceptional sentence based on facts that would establish an element of a more serious crime for which the defendant was either not charged or not convicted:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. . . . Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(c), (d), (f), and (g).

RCW 9.94A.370(2). But "the real facts doctrine does not

---

[2]To the extent that Jacobson thinks the Supreme Court misinterpreted RCW 9.94A.210(4) in *Solberg*, thereby violating his statutory right to appeal his exceptional sentence, he will have to present his arguments to that court. *See State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997) (noting that "the Court of Appeals is bound by decisions of the Washington Supreme Court").

preclude reliance on facts that establish elements of additional uncharged crimes to enhance a sentence when those facts are part and parcel of the current offense." *Tierney*, 74 Wn. App. at 352. In other words, the "real facts doctrine only bars reliance on those facts wholly unrelated to the current offense or those facts [that] would elevate the degree of the crime charged to a *greater* offense than charged." *Id.* (footnote omitted).

In this case, the sentencing court imposed Jacobson's exceptional sentence after concluding that he engaged in conduct more egregious than typical for a vehicular homicide case: "Defendant's conduct is clearly distinguishable from conduct seen in 'typical' vehicular homicide cases. The severity and egregiousness of the aforementioned facts fall between those of Vehicular Homicide and Murder in the Second Degree." Clerk's Papers at 83-84.

Jacobson argues that the sentencing court's conclusion demonstrates that his exceptional sentence was based on aggravating facts that would establish some uncharged or unproven crime more serious than vehicular homicide. But the sentencing judge explained in his oral ruling that the exceptional sentence was based on aggravating facts that were part and parcel of Jacobson's vehicular homicide conviction: "There is no crime between vehicular homicide and felony murder that has been defined that would encompass the kind of conduct [sic] that you engaged in, that you admittedly engaged in." 8 Report of Proceedings at 19.[3] The sentencing court did not violate the real facts doctrine when it imposed Jacobson's exceptional sentence because it neither relied on facts wholly unrelated to the current offense nor relied on facts that would elevate the degree of the crime charged to a greater offense than charged—no such greater offense being defined by law. Moreover, Jacobson's theory would render the conduct-more-egregious-than-typical aggravating factor meaning-

---

[3] An "appellate court may use the trial court's oral ruling to interpret [consistent] written findings and conclusions." *State v. Bynum*, 76 Wn. App. 262, 266, 884 P.2d 10 (1994), *review denied*, 126 Wn.2d 1012 (1995).

less, for it can virtually always be said that conduct more egregious than typical for the current offense would elevate the degree of the crime charged to a greater offense if the Legislature had chosen to define any such greater offense so as to encompass the more egregious than typical conduct.

In conclusion, the sentencing court's stated reason for imposing Jacobson's exceptional sentence—his more egregious than typical conduct—is supported by substantial evidence in the record and is a legally adequate aggravating factor. Because RCW 9.94A.120(2) and RCW 9.94A.390(2)(e) satisfy the requirements of due process, the conduct-more-egregious-than-typical aggravating factor—as applied to Jacobson—is not unconstitutionally vague. The Supreme Court's decision in *Solberg* does not infringe upon Jacobson's statutory or constitutional right to appeal his exceptional sentence. And the sentencing court did not violate the real facts doctrine when it imposed Jacobson's exceptional sentence based on aggravating facts that were part and parcel of his vehicular homicide conviction and not of a greater offense as defined by law. Accordingly, Jacobson's exceptional sentence is affirmed.

COLEMAN and ELLINGTON, JJ., concur.

Review denied at 137 Wn.2d 1033 (1999).